Ray MARSHALL (Successor to W. J. Usery), Secretary of Labor, United States Department of Labor, Plaintiff-Appellant,

v.

OWENSBORO–DAVIESS COUNTY HOSPITAL et al., Defendants-Appellees.

No. 77–3069.

United States Court of Appeals, Sixth Circuit.

Argued June 12, 1978.

Decided Aug. 9, 1978.

Marvin Tincher, Regional Atty., Frank Steiner, U. S. Dept. of Labor, Nashville, Tenn., Carin Ann Clauss, Lois G. Williams, U. S. Dept. of Labor, Washington, D. C., for plaintiff-appellant.

Ronald M. Sullivan, Sandidge, Holbrook, Craig & Hager, Owensboro, Ky., for defendants-appellees.

Before WEICK, PECK * and LIVELY, Circuit Judges.

WEICK, Circuit Judge.

The suit in the District Court was brought by the Secretary of Labor against the Owensboro-Daviess County Hospital, a corporation, the City of Owensboro, Kentucky, and the County of Daviess, Kentucky, under the Equal Pay Act of 1963, 29 U.S.C. § 206(d)(1), (3). The Secretary sought to enjoin the defendants from violating the Act by paying wages to "male nursing assistants" (*i. e.*, orderlies) higher than wages paid to female "nurse assistants" (*i. e.*, aides), and sought as well an award of back pay unlawfully withheld. The case proceeded to trial, and the record shows that at the close of the Secretary's evidence the District Court *sua sponte* granted defendants' motion for a directed verdict and adopted findings of fact and conclusions of law, and entered judgment for defendants, dismissing the complaint. The Court found as fact that there were substantial differences between the two positions, the duties of a typical orderly requiring skill, effort, and responsibility greater than those of a typical aide, and

---

* The Honorable John W. Peck became a Senior Circuit Judge on July 1, 1978.

accordingly held that the wage differential was justified and was not in violation of the Act.

On appeal, in *Brennan v. Owensboro-Daviess County Hosp.*, 523 F.2d 1013 (6th Cir. 1975), *cert. denied*, 425 U.S. 973, 96 S.Ct. 2170, 48 L.Ed.2d 796 (1976), we reversed, finding that several of the District Court's pertinent findings of fact were not supported by substantial evidence and were clearly erroneous, and that the Secretary had established a *prima facie* case of sex discrimination by demonstrating that the jobs of aides and orderlies, during the relevant period, were substantially the same and were performed under identical working conditions. The case was remanded to the District Court to give to the defendants an opportunity to rebut the Secretary's *prima facie* case, or to show that a factor other than sex justified the wage differential.

Before the case was scheduled for hearing in the District Court, however, the Supreme Court announced its decision in *National League of Cities v. Usery*, 426 U.S. 833, 96 S.Ct. 2465, 49 L.Ed.2d 245 (1976), in which the Court held that the application of the minimum wage and overtime provisions of the Fair Labor Standards Act (FLSA), 29 U.S.C. §§ 206(a), (b), 207(a), to state and local government employees performing traditional governmental functions could not be constitutionally justified as a regulation of commerce.

Because the Equal Pay Act of 1963 (EPA) had been originally enacted as an amendment to the FLSA, defendants were granted leave to amend their answer in order to raise the issue of the constitutionality of the EPA as applied to employees of a state hospital. The District Court granted defendants' motion for summary judgment,

holding that under *National League of Cities* "the term 'employers,' as defined for the entire Act, no longer includes state-operated hospitals or their employees." *Usery v. Owensboro-Daviess County Hosp.*, 423 F.Supp. 843, 845 (W.D.Ky.1976).[1] We disagree, and accordingly we reverse.

I

In 1938 Congress enacted the Fair Labor Standards Act, ch. 676, 52 Stat. 1060 (1938) (current version at 29 U.S.C. §§ 201–19), which required certain employers to pay their employees a minimum wage and to pay them at one and one half times the regular hourly rate for work in excess of forty hours per week. In *United States v. Darby*, 312 U.S. 100, 61 S.Ct. 451, 85 L.Ed. 609 (1941), the Supreme Court unanimously upheld the FLSA as a valid exercise of Congressional power under the Commerce Clause.

As originally enacted § 3(d) of the FLSA specifically excluded states and their political subdivisions from coverage. The scope of employee coverage was significantly expanded, however, by the Fair Labor Standards Amendments of 1966, Pub.L. No. 89–601, § 102, 80 Stat. 831, which eliminated the prior exemptions of public and nonprofit hospitals, schools, and certain other institutions. The extension of the FLSA to cover such enterprises was upheld by the Supreme Court in *Maryland v. Wirtz*, 392 U.S. 183, 88 S.Ct. 2017, 20 L.Ed.2d 1020 (1968).

The extension of the FLSA to the states was completed by the Fair Labor Standards Amendments of 1974, Pub.L. No. 93–259, § 6(a)(5), 88 Stat. 59 (1974), in which the critical definition of "enterprises engaged in commerce or in the production of com-

---

1. To support its position the District Court cited as authority only one case, *Howard v. Ward County*, 418 F.Supp. 494 (D.N.D.1976). We are advised by appellant that to date some thirty-five District Court decisions have decided cases contrary to *Howard*, including seven decisions in this Circuit, *e. g., Usery v. Kent State Univ.*,

No. 75–550 (N.D.Ohio Oct. 6, 1976), *appeal docketed*, No. 77–3284 (6th Cir. June 17, 1977).

For a discussion of the decisions in this area, in which it is concluded that the District Courts erred in *Howard* and the present case, see 26 Cleve.St.L.Rev. 259, 289–91 (1977).

merce" was expanded to encompass "an activity of a public agency," 29 U.S.C. § 203(s)(5), and "employer" was redefined to include "a public agency" in 29 U.S.C. § 203(d). The FLSA thus was amended to impose substantially identical requirements upon public employers as on private employers.

In *National League of Cities, supra,* individual cities, states and organizations brought an action challenging the 1974 amendments primarily on Tenth Amendment grounds. As summarized by the Court, 426 U.S. at 837, 96 S.Ct. at 2467:

> They asserted in effect that when Congress sought to apply the Fair Labor Standards Act provisions virtually across the board to employees of state and municipal governments it "infringed a constitutional prohibition" running in favor of the States *as States.* The gist of their complaint was not that the conditions of employment of such public employees were beyond the scope of the commerce power had those employees been employed in the private sector but that the established constitutional doctrine of inter-governmental immunity consistently recognized in a long series of our cases affirmatively prevented the exercise of this authority in the manner which Congress chose in the 1974 amendments.

The Court agreed, and accordingly overruled *Maryland v. Wirtz, supra,* 426 U.S. at 840, 96 S.Ct. 2465.

The Court stated:

> One undoubted attribute of state sovereignty is the States' power to determine the wages which shall be paid to those whom they employ in order to carry out their governmental functions . . . . [National League of Cities, *supra,* at 845, 96 S.Ct. at 2471.]

and further stated:

> But it cannot be gainsaid that the federal requirement directly supplants the considered policy choices of the States'

elected officials and administrators as to how they wish to structure pay scales in state employment. [National League of Cities, *supra,* at 848, 96 S.Ct. at 2472.]

The Court concluded, at 851–52, 96 S.Ct. at 2474:

> [B]oth the minimum wage and the maximum hour provisions will impermissibly interfere with the integral governmental functions of these bodies. We earlier noted some disagreement between the parties regarding the precise effect the amendments will have in application. We do not believe particularized assessments of actual impact are crucial to resolution of the issue presented, however. For even if we accept appellee's assessments concerning the impact of the amendments, their application will nontheless significantly alter or displace the States' abilities to structure employer-employee relationships . . . . [T]he dispositive factor is that Congress has attempted to exercise its Commerce Clause authority to prescribe minimum wages and maximum hours to be paid by the States in their capacities as sovereign governments. In so doing, Congress has sought to wield its power in a fashion that would impair the States' "ability to function effectively in a federal system" . . . . [*Fry v. United States,* 421 U.S. 542, 547 n. 7, 95 S.Ct. 1792, 44 L.Ed.2d 363 (1975)].

In a footnote, however, 426 U.S. at 852 n. 17, 96 S.Ct. at 2474, the Court added:

> We express no view as to whether different results might obtain if Congress seeks to affect integral operations of state governments by exercising authority granted it under other sections of the Constitution such as the spending power, Art. I, § 8, cl. 1, or § 5 of the Fourteenth Amendment.

II

The Equal Pay Act of 1963, 29 U.S.C. § 206(d), was enacted by Congress as an amendment to the FLSA. It was based on

a Congressional finding that sex-based wage differentials have a substantial adverse impact on interstate commerce, and accordingly mandated that all persons performing equal work must receive equal pay, unless the differential is justified by a consideration other than sex.[2]

In holding the EPA unconstitutional as applied to a state hospital, the District Court stated, 423 F.Supp. at 845:

Although the *League* ruling did leave unanswered questions as to which state activities were essential to state sovereignty and therefore protected by the Tenth Amendment from federal regulation under the Commerce Clause, that decision explicitly stated that hospitals were encompassed within its ruling. Thus, the term "employers", as defined for the entire Act, no longer includes state-operated hospitals or their employees.

At the outset it should be noted that to date three Circuits have considered the claims asserted by defendants in the District Court, and have uniformly rejected them. *Marshall v. City of Sheboygan*, 577 F.2d 1 (7th Cir. 1978);[3] *Usery v. Charleston County School Dist.*, 558 F.2d 1169 (4th Cir. 1977); *Usery v. Allegheny County Inst. Dist.*, 544 F.2d 148 (3d Cir. 1976), *cert. denied*, 430 U.S. 946, 97 S.Ct. 1582, 51 L.Ed.2d 793 (1977). We agree with the decisions in *Charleston* and *Allegheny* which held that, although Congress did not expressly state the constitutional basis of its extension of the FLSA to the States in 1974, this action with respect to the equal pay provisions was authorized by § 5 of the Fourteenth Amendment. 558 F.2d at 1170; 544 F.2d at 155.

In contrast to the commerce power, Congress' enforcement power under the Fourteenth Amendment is not limited by the Tenth Amendment. *Ex parte Virginia*, 100 U.S. 339, 346–48, 25 L.Ed. 676 (1879). As stated above, the Supreme Court in *National League of Cities* expressly did not pass judgment upon Congress' Fourteenth Amendment power. 426 U.S. at 852 n. 17, 96 S.Ct. 2465.

Nevertheless, the Court's view of that power was made plain in *Fitzpatrick v. Bitzer*, 427 U.S. 445, 96 S.Ct. 2666, 49 L.Ed.2d 614 (1976), decided only four days after *National League of Cities*, in which

---

2. The Equal Pay Act of 1963 (EPA), Pub.L. No. 88–38, § 3, 77 Stat. 56, 29 U.S.C. § 206(d)(1), provides:

(d)(1) No employer having employees subject to any provisions of this section shall discriminate, within any establishment in which such employees are employed, between employees on the basis of sex by paying wages to employees in such establishment at a rate less than the rate at which he pays wages to employees of the opposite sex in such establishment for equal work on jobs the performance of which requires equal skill, effort, and responsibility, and which are performed under similar working conditions, except where such payment is made pursuant to (i) a seniority system; (ii) a merit system; (iii) a system which measures earnings by quantity or quality of production; or (iv) a differential based on any other factor other than sex: *Provided*, That an employer who is paying a wage rate differential in violation of this subsection shall not, in order to comply with the provisions of this subsection, reduce the wage rate of any employee.

Section 2 of the EPA set forth the aforementioned Congressional findings, and stated further:

(b) It is hereby declared to be the policy of this Act, through exercise by Congress of its power to regulate commerce . . . to correct [these] conditions . . . in such industries.

3. The holding of this case was that the 1974 extension of the Equal Pay Act to the States and their political subdivisions in a sex discrimination case is a valid exercise of Congress' power under the Commerce Clause and is not prohibited by the Tenth Amendment. Because of our disposition of this case it is unnecessary for us to reach the Commerce Clause issue. We note, however, that the seemingly definite and inflexible language of the Supreme Court in *National League of Cities*, quoted above, would appear to prohibit such regulation, at least as far as employee wage scales are involved. For discussions of this issue, see 54 U.Det.J.Urb.L. 617, 635–36 (1977) and 26 Cleve. St.L.Rev. 259, 282, 288–89 (1977).

case the Court upheld the application to state employment of the sex discrimination provisions of Title VII of the Civil Rights Act of 1964. The reasoning of the Court in *Fitzpatrick* applies with equal force to the extension of the Equal Pay Act to the States. The Court indicated such an analogy in *Fitzpatrick*, 427 U.S. at 453 n. 9, 96 S.Ct. at 2670, which reads as follows:

> There is no dispute that in enacting the 1972 Amendments to Title VII to extend coverage to the States as employers, Congress exercised its power under § 5 of the Fourteenth Amendment. See *e. g.*, H.R. Rep. No. 92–238, p. 19 (1971); S.Rep. No. 92–415, pp. 10–11 (1971). Cf. *National League of Cities v. Usery*, 426 U.S. 833, 96 S.Ct. 2465, 49 L.Ed. 245 (1976).

The absence of any express reference to the Fourteenth Amendment in the 1974 amendments is of no consequence. It was not necessary for Congress to expressly rely on § 5 in exercising its power because such power clearly existed. We agree with the Third Circuit that "[i]n exercising the power of judicial review, as distinguished from the duty of statutory interpretation, we are concerned with the actual powers of the national government." *Allegheny County Inst. Dist., supra*, 544 F.2d at 155. Cf. *Katzenbach v. Morgan*, 384 U.S. 641, 651, 86 S.Ct. 1717, 1724, 16 L.Ed.2d 828 (1966), in which the Court stated:

> Correctly viewed, § 5 is a positive grant of legislative power authorizing Congress to exercise its discretion in determining whether and what legislation is needed to secure the guarantees of the Fourteenth Amendment.

Defendant's final argument is based on the contention that the application to them of the Equal Pay Act is dependent on the inclusion of public agencies and their per-

sonnel in the EPA's definitions of "employer" and "employee," and that these definitions were struck down for all purposes in *National League of Cities*. Again, other Courts have adequately disposed of this issue.

Although there now exists an affirmative defense to an action against defendants under the minimum wage provision of 29 U.S.C. § 206(b), nothing in *National League of Cities* precludes reference to that section as the relevant cross-reference for § 206(d)(1). *Charleston County School Dist., supra*, 558 F.2d at 1171; *Allegheny County Inst. Dist., supra*, 544 F.2d at 155 n. 11. Furthermore, as stated in *Marshall v City of Sheboygan*, 577 F.2d at 5 n. 15 (7th Cir. 1978):

> The ready answer is that Congress itself has not considered the coverage of the minimum wage and equal pay provisions coextensive. For example, professional, executive, and administrative employees who have always been exempt from the minimum wage and overtime requirements are entitled to the protections of the EPA.

Finally, we note that the EPA is subject to the broad severability clause of the FLSA, 29 U.S.C. § 219.

For the foregoing reasons the judgment of the District Court is reversed, and the case is remanded for proceedings consistent with our prior decision, *Brennan v. Owensboro-Daviess County Hosp.*, 523 F.2d 1013 (6th Cir. 1975).