**THE DETROIT EDISON COMPANY,**
Plaintiff,

v.

**MICHIGAN DEPARTMENT OF ENVI-RONMENTAL QUALITY, and Wayne County Department of Environment,**
Defendants.

No. 98–74129.

United States District Court,
E.D. Michigan,
Southern Division.

Dec. 15, 1998.

Christopher C. Nern, Peter A. Marquardt, The Detroit Edison Company, Detroit, Michigan, Joseph M. Polito, Mark A. Goldsmith, Honigman Miller Schwartz and Cohn, Detroit, Michigan, for plaintiff.

Jennifer M. Granholm, Mary Rose MacMillan, Hilda V. Gurley, Wayne County Corporation Counsel, Detroit, Michigan, Beth S. Gotthelf, Tammy L. Brown, Seyburn, Kahn, Ginn, Bess, Deitch and Serlin, P.C., Southfield, Michigan, Todd B. Adams, Assistant Attorney General, Natural Resources Division, Lansing, Michigan, for defendants.

## OPINION AND ORDER

FEIKENS, District Judge.

### Introduction

Plaintiff The Detroit Edison Company ("Detroit Edison") has moved for remand of its federal and state law claims against defendants Michigan Department of Environmental Quality ("MDEQ") and Wayne County Department of Environment ("Wayne County"). The central issue before me is whether the Eleventh Amendment of the United States Constitution bars Detroit Edison's claims against MDEQ from removal jurisdiction, even though MDEQ does not raise the Amendment as a defense. This issue presents a question of first impression in light of the Supreme Court's recently clarified and unanimous understanding of the Eleventh Amendment in *Wisconsin Dep't of Corrections, et al. v. Schacht*, 524 U.S. 381, 118 S.Ct. 2047, 141 L.Ed.2d 364 (1998).

## I. Background

The parties' Eleventh Amendment dispute has arisen out of Detroit Edison's decision in the spring of 1998 to restart its almost fifty-year-old, coal-fired Connors Creek Power Plant ("the Plant"). Located in Detroit, Michigan, the Plant has been dormant since 1988. Detroit Edison's decision to restart it prompted the United States Environmental Protection Agency ("EPA") to send Detroit Edison a request for information on June 8, 1998 under the federal Clean Air Act, 42 U.S.C. § 7401 *et seq.* ("CAA"). Detroit Edison responded to EPA's request on June 30, 1998. Defendants also received copies of the response: MDEQ because the State of Michigan has been delegated CAA authority by the EPA, and Wayne County because it has entered into a contract with MDEQ that gives it CAA authority within its boundaries. Wayne County also claims independent authority under county ordinance.

After their review of Detroit Edison's response, defendants issued separate, but virtually identical, letters of violation to Detroit Edison on July 16, 1998. Both letters advised Detroit Edison that its restart of the Plant required a CAA Prevention of Significant Deterioration ("PSD") permit, a Michigan Permit to Install, and a Michigan Renewable Operating Permit ("ROP"). The letters also notified Detroit Edison that the Plant restart had to satisfy the CAA's New Source Performance Standards ("NSPS") and Michigan's requirements for a major offset modification.

On August 5, 1998, Detroit Edison filed an action in state court seeking declaratory and injunctive relief from defendants' July 16 findings of CAA, state law, and county ordinance violations. Detroit Edison's six-count complaint pleads both federal and state law claims in Counts I, V, and VI and only state law claims in Counts II, III, and IV.[1] On August 26, 1998, Wayne County filed a notice of removal in the United States District Court for the Western District of Michigan ("Western District") pursuant to the removal provisions of 28 U.S.C. § 1441 and 28 U.S.C. § 1446.[2] MDEQ concurred in the removal.

---

1. Count I alleges that the defendants' July 16 findings denied Detroit Edison's procedural rights under the United States Constitution, the Michigan Constitution, various state laws, and a county ordinance. Count II alleges that state law provides no basis for the ROP finding. Count III alleges an estoppel claim against the ROP finding. Count IV alleges that the doctrine of mutual mistake vitiates the ROP finding. Count V alleges that the restart does not subject the Plant to federal PSD and NSPS regulations as well as Michigan's permit to install and major offset modification requirements. Finally, Count VI alleges that MDEQ's findings violate the Michigan Revised Judicature Act, the Michigan Constitution, and the United States Constitution.

2. Wayne County removed to the United States District Court for the Western District of Michigan, instead of the United States District Court for the Eastern District of Michigan, because the Western District geographically embraces the

Also on August 26, 1998, MDEQ filed an answer with counterclaims, later amended on September 4, 1998. MDEQ's amended counterclaims plead three counts of declaratory and injunctive relief; Count I alleges that Detroit Edison violated numerous provisions of the CAA, while Counts II and III allege claims under state environmental laws.[3] Wayne County filed its answer with counterclaims on August 31, 1998.[4]

On the same day, Wayne County moved to transfer this case to the United States District Court for the Eastern District of Michigan, Southern Division, pursuant to 28 U.S.C. § 1404(a). MDEQ concurred in the motion. Detroit Edison also concurred but without prejudice to its right to file a motion to remand pursuant to 28 U.S.C. § 1447(c). On September 21, 1998, Magistrate Judge Doyle A. Rowland granted the motion to transfer. On September 25, 1998, plaintiff filed its motion to remand, arguing that the entire case should be remanded because of the Eleventh Amendment and the doctrine of discretionary remand available through 28 U.S.C. § 1367(c).

## II. Analysis

I begin with what is not in doubt: my jurisdiction over the claims left untouched by plaintiff Detroit Edison's assertion of the Eleventh Amendment bar. Those claims are Detroit Edison's federal and state law claims against Wayne County and defendants' federal and state law counterclaims against Detroit Edison.

 Federal statute permits a defendant in any state civil action to remove the action to a federal district court that has original jurisdiction over the action. *See* 28 U.S.C. § 1441(a). If diversity jurisdiction is not available, as here, the original jurisdiction of the district court can only be "founded on a claim or right arising under the Constitution,

treaties or laws of the United States." 28 U.S.C. § 1441(b). I must examine the claims in plaintiff's complaint as if it were the moment of removal. *See Ahearn v. Charter Township of Bloomfield*, 100 F.3d 451, 453 (6th Cir.1996). Because they arise under the United States Constitution and the federal CAA, plaintiff's federal claims against Wayne County were within the original jurisdiction of the Western District and were thus properly removed. The transfer of September 21, 1998 then placed these claims within my jurisdiction.

 Plaintiff's state law claims against Wayne County follow the claims of original jurisdiction against Wayne County into my jurisdiction. Once a district court has original jurisdiction over a claim, it can then exercise supplemental jurisdiction over all claims so related to that claim that "they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a). Claims satisfy the case or controversy requirement of Article III if they "derive from a common nucleus of operative fact." *United Mine Workers of America v. Gibbs*, 383 U.S. 715, 725, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966). All federal and state law claims in this case, even those objected to on Eleventh Amendment grounds, undeniably derive from the common nucleus of operative fact surrounding Detroit Edison's decision to restart the Plant. Because they therefore share an Article III relationship with the claims of original jurisdiction, plaintiff's state law claims against Wayne County were within the supplemental jurisdiction of the Western District and thus properly removed. They are now also within my jurisdiction due to the September 21, 1998 transfer.

Defendants' federal and state law counterclaims are similarly within my jurisdiction.

---

state court where Detroit Edison's action is pending. *See* 28 U.S.C. § 1441(a).

**3.** Count I specifically alleges that Detroit Edison has failed to comply with the CAA's PSD requirements, its NSPS requirements, and its Title IV acid rain requirements. Count II alleges that Detroit Edison has violated Part 55 of the Michigan Natural Resources and Environmental Protection Act. Count III alleges that Detroit Edison has violated the Michigan Environmental Protec-

tion Act by not installing certain pollution emission controls at the Plant.

**4.** Wayne County's counterclaims assert four counts. Count I is essentially identical to MDEQ's Count I. Count II is essentially identical to MDEQ's Count III. Count III alleges that Detroit Edison has violated Wayne County's Air Pollution Control Ordinance. Count IV alleges that operation of the Plant constitutes a common law nuisance.

Defendants' federal claims are within the federal question jurisdiction of the federal courts as provided in 28 U.S.C. § 1331. I have already determined that defendants' state law claims are within the supplemental jurisdiction of the federal courts as provided in section 1367(a).

What remains in jurisdictional doubt are plaintiff's claims against MDEQ.

### A. The Eleventh Amendment

 The Eleventh Amendment to the United States Constitution provides:

> The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State.

The Supreme Court has long held that the Amendment grants a state immunity from suits brought in federal courts by its own citizens or by citizens of another state. *See Hans v. Louisiana,* 134 U.S. 1, 10 S.Ct. 504, 33 L.Ed. 842 (1890). Any entity that is an "arm of the state" also enjoys the immunity. *See Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle,* 429 U.S. 274, 280, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977). Because Michigan law has created MDEQ as a principal department within the executive branch of the State of Michigan's government, *see* Mich. Comp.Laws.Ann. § 324.99903 (West Supp. 1998), it is an "arm of the state" entitled to assert Eleventh Amendment immunity, *see Mt. Healthy,* 429 U.S. at 280, 97 S.Ct. 568.[5]

Plaintiff Detroit Edison contends that the Eleventh Amendment's grant of immunity to MDEQ requires me to remand its claims against MDEQ. Detroit Edison alternatively contends that I have the discretion to consider and decide *sua sponte* the issue of MDEQ's Eleventh Amendment immunity, even if MDEQ does not request this. MDEQ counters by arguing that the defense of sovereign immunity under the Eleventh Amendment is solely its defense to raise.

MDEQ accordingly reasons that neither I nor Detroit Edison can raise the defense on its behalf.

MDEQ's novel position relies entirely on *Wisconsin Dep't of Corrections, et al. v. Schacht,* ── U.S. ──, 118 S.Ct. 2047, 141 L.Ed.2d 364 (1998). The issue before the Supreme Court in *Schacht* was whether a defendant can remove to federal court claims of original jurisdiction not barred by the Eleventh Amendment when other claims in the case are barred by the Amendment. *See id.* at 2050. The Court held unanimously that "the presence in an otherwise removable case of a claim that the Eleventh Amendment may bar does not destroy removal jurisdiction that would otherwise exist." *See id.* at 2051.

In so holding, the Court abrogated the United States Court of Appeals for the Seventh Circuit's characterization of Eleventh Amendment immunity as analogous to diversity jurisdiction; that is, the presence of just one claim barred by the Eleventh Amendment destroys original jurisdiction in the same way as just one nondiverse party automatically destroys original jurisdiction founded on diversity. *See id.* at 2052. The Court found this analogy "unconvincing." *Id.* It reasoned that:

> The Eleventh Amendment ... does not automatically destroy original jurisdiction. *Rather, the Eleventh Amendment grants the State a legal power to assert a sovereign immunity defense should it choose to do so.* The State can waive the defense. Nor need a court raise the defect on its own. Unless the State raises the matter, a court can ignore it.

*Id.* at 2052–53 (emphasis added) (citations omitted).

In this passage, I find that the Supreme Court has announced a subtle and new direction in Eleventh Amendment jurisprudence: the Amendment as a *state's* defense to exercise if *it* chooses.[6] I am not alone in

---

5. Because county governments cannot assert an Eleventh Amendment immunity defense, *see Mt. Healthy,* 429 U.S. at 280, 97 S.Ct. 568, my discussion of the Eleventh Amendment issue will not refer to defendant Wayne County.

6. I use "new" in the sense of the sum, the direction, being something dramatically more than its parts, the collection of scattered precedent the Court draws upon in the passage at issue. My research finds no case where the Court has so strongly stated that the immunity is a defense within the state's discretion to employ.

this reading of *Schacht*. Although no federal court has ruled, post-*Schacht*, on precisely the issue before me, at least one court, the United States Court of Appeals for the Tenth Circuit, has also understood the import of the *Schacht* decision to be an interpretation of Eleventh Amendment immunity as "in the nature of an affirmative defense that may be asserted or waived at a state's discretion." *Branson Sch. Dist. RE–82 v. Romer*, 161 F.3d 619, 1998 WL 804625, *8 (10th Cir.1998) (*dictum*).

Detroit Edison argues that *Schacht* does not control my ruling in this case because *Schacht* did not handle the issue before me and the "defense" passage itself was *dictum*. While I agree that *Schacht* did not squarely confront the issue I presently face, I disagree with plaintiff's assertion that the passage is *dictum*. A reading of the *Schacht* opinion reveals that the passage is the culminating point at which the Supreme Court announces why the Eleventh Amendment does not operate as a jurisdictional bar that automatically destroys original jurisdiction upon removal. The passage is therefore a crucial and necessary step in the Court's reasoning in *Schacht* and is inseparable from the holding.

That passage, which necessarily comes with the *Schacht* holding, acts to *de facto* abrogate the previous decisions of lower courts that conflict with its understanding of Eleventh Amendment immunity as the state's defense to raise. By more clearly stating its conception of Eleventh Amendment immunity as a defense the state commands, the Supreme Court has altered the conceptual assumptions upon which prior decisions are based and has made them flawed on the precise issue before me. The result is that precedent does not control here. Neither does *Schacht* control because it did not answer the issue before me. This is the very definition of a question of first impression: no precedent compels an answer by *stare decisis*. Thus I find that I have at hand only the suggestions of persuasive authority, with *Schacht* naturally the most persuasive.

In support of its arguments against the application of *Schacht*, Detroit Edison relies on two cases: *Wilson–Jones v. Caviness*, 99 F.3d 203 (6th Cir.1996), and *Estate of Ritter v. Univ. of Michigan*, 851 F.2d 846 (6th Cir.1988). In *Caviness*, the United States Court of Appeals for the Sixth Circuit ("Sixth Circuit") held that it was obligated to address the issue of Eleventh Amendment immunity. *See* 99 F.3d at 206. The court reasoned that its obligation stemmed from an understanding of state immunity as "jurisdictional in the same sense as the complete diversity requirement or the well-pleaded complaint rule." *Id.* (citations omitted). This is the exact analogy the Supreme Court found "unconvincing" in *Schacht*. 118 S.Ct. at 2052. Indeed, if anything is certain from *Schacht*, it is that the analogy found in *Caviness* is not an accurate understanding of the nature of Eleventh Amendment immunity. *Caviness* is therefore not even helpful as persuasive authority.

The second case, *Ritter*, stands for the proposition that an Eleventh Amendment issue can be raised *sua sponte* for the first time on appeal. *See* 851 F.2d at 851–52. Detroit Edison contends that *Ritter* logically gives the same discretion to a trial court. To the extent that *Ritter* supports a federal trial court's discretionary authority to raise the Eleventh Amendment issue, despite the state's refusal or failure to do so, I find it consistent with *Schacht*. *Schacht* recognizes that a federal court has the discretion to raise and decide the Eleventh Amendment issue *sua sponte* but is under no duty to do so. *See* 118 S.Ct. at 2052 (noting that a court "can" ignore the Eleventh Amendment if the state does not raise it).

This point about discretion leads to Detroit Edison's last argument on the Eleventh Amendment issue. Detroit Edison contends that even if I have no duty to rule on the Eleventh Amendment because MDEQ does not assert it, I should still exercise the discretion permitted in *Schacht* and *Ritter*. Detroit Edison believes that the exercise of my discretion is warranted by the "gamesmanship" that MDEQ may be engaged in. (Pl.'s Mot. at 2, n. 2.) Detroit Edison fears that MDEQ could unfairly reverse an unfavorable trial judgment by raising its Eleventh Amendment defense for the first time on appeal. MDEQ denies any "gamesmanship" intent, arguing that it would lose all credibility if it attempted such a tactic before the Sixth Circuit after having strenuously re-

fused to assert its immunity defense in the trial court. MDEQ further contends that Detroit Edison is the party that has actually resorted to "gamesmanship" by allegedly forum-shopping among state courts so as to avoid filing in a potentially hostile jurisdiction that embraces the Plant.

I find these "gamesmanship" arguments unmoving. All are speculative. As to Detroit Edison's discretion arguments in particular, I make one further point: Detroit Edison is in essence asking me to deny a sovereign state the forum it desires, and to which it can rightfully remove, pursuant to the congressional intent embodied in the removal provisions of 28 U.S.C. § 1441 and *Schacht's* understanding of the nature of the Eleventh Amendment immunity defense. If MDEQ's ability to do this creates an unfair tactical advantage, then Detroit Edison has a dispute with Congress and the Supreme Court. I am not at liberty to carry that dispute forward.

█ In light of all the reasons discussed, I hold that the Eleventh Amendment does not bar removal of Detroit Edison's claims against MDEQ because MDEQ has chosen not to assert its immunity defense under the Amendment. My holding does not reach the traditional waiver issue sometimes found in pre-*Schacht* Eleventh Amendment jurisprudence. *See, e.g., Gwinn Area Community Schools v. State of Michigan,* 741 F.2d 840, 846–47 (6th Cir.1984). The plain language of *Schacht* treats both acts—a decision not to assert and waiver—as legally distinct, yet equally available to the states. *See* 118 S.Ct. at 2052.

█ I also hold, for the reasons stated above, that the circumstances of this case do not compel me to exercise my discretion to *sua sponte* raise and decide the issue of MDEQ's Eleventh Amendment immunity from suit in federal court.

█ Finally, I hold that Detroit Edison's claims against MDEQ are within my jurisdiction. Section 1441(a) of the removal statute permits removal of Detroit Edison's federal claims because they are within the original jurisdiction of the federal courts. Detroit Edison's federal and state law claims derive from a common nucleus of operative fact and so the state law claims qualify for supplemental jurisdiction under section 1367(a). Thus the Western District's removal of Detroit Edison's federal and state law claims against MDEQ was proper. The uncontested September 21, 1998 transfer of those claims placed them in my jurisdiction.

**B. Remand Under 28 U.S.C. § 1367(c)**

Detroit Edison argues in the alternative that I should remand the entire case for reasons of judicial economy and fairness pursuant to the Supreme Court's decision in *Carnegie–Mellon Univ. v. Cohill,* 484 U.S. 343, 108 S.Ct. 614, 98 L.Ed.2d 720 (1988), and the factors for declining supplemental jurisdiction in 28 U.S.C. § 1367(c). MDEQ and Wayne County argue that the governing remand provision is not section 1367, but 28 U.S.C. § 1441(c).[7]

Defendants are incorrect. Section 1441(c) governs the situation where a court confronts, on removal, a claim of original jurisdiction under 28 U.S.C. § 1331 joined with an unrelated, non-removable claim. I do not face that situation here. As discussed more thoroughly above, the state law claims alleged by plaintiff and defendants are so related to the federal claims as to "form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a). The state law claims can therefore be removed to a federal court. Section 1441(c) does not apply. *See Cohill,* 484 U.S. at 354, 355 n. 11, 108 S.Ct. 614.

█ In the statutory provisions of 28 U.S.C. § 1367, Congress has codified the long-standing principles of pendent and ancillary jurisdiction under a "common heading." *City of Chicago, et al. v. Int'l College of Surgeons, et al.,* 522 U.S. 156, ——, 118 S.Ct. 523, 530, 139 L.Ed.2d 525 (1997). Pendent jurisdiction "is a doctrine of discretion, not of

**7.** Section 1441(c) states:

Whenever a separate and independent claim or cause of action within the jurisdiction conferred by section 1331 of this title is joined with one or more otherwise non-removable claims or causes of action, the entire case may be removed and the district court may determine all issues therein, or, in its discretion, may remand all matters in which State law predominates.

plaintiff's right." *Gibbs,* 383 U.S. at 726, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966). Accordingly, I should treat the state law claims in this case "in the manner that best serves the principles of economy, convenience, fairness, and comity which underlie the pendent jurisdiction doctrine." *Cohill,* 484 U.S. at 357, 108 S.Ct. 614. Section 1367(c) sets out the circumstances in which I can refuse to exercise my supplemental jurisdiction:

(c) The district courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) if—

(1) the claim raises a novel or complex issue of State law,

(2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction,

(3) the district court has dismissed all claims over which it has original jurisdiction, or

(4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

In addition to these factors, the Supreme Court has also recommended that district courts examine "the circumstances of the particular case, the nature of the state law claims, the character of the governing state law, and the relationship between the state and federal claims." *City of Chicago,* 118 S.Ct. at 534.

Some of Detroit Edison's arguments on the issue of discretionary remand are now irrelevant in light of my ruling on the Eleventh Amendment. Three arguments do survive, however. Detroit Edison first argues that I should decline to exercise supplemental jurisdiction because the state law claims predominate in this case. Detroit Edison rests this argument on the fact that the state law claims outnumber the federal claims.

█ Implicit in this argument is the assumption that supplemental jurisdiction should turn on the counting of claims. I find this assumption flawed. While the state law claims have the edge in numbers, this simple fact does not necessarily mean that the state law claims "substantially predominate." 28 U.S.C. § 1367(c)(2). The federal claims in this case involve not only questions of federal constitutional law but also the resolution of

several complex issues under the federal CAA. Approximately half of the state law claims, on the other hand, require only the resolution of such well-established common law doctrines as equitable estoppel, mutual mistake, and nuisance. The remaining state law claims present issues of state environmental law that appear to be intertwined with federal environmental law and issues of state constitutional law that are likely to parallel the issues presented by federal constitutional law. I find therefore that the state law claims do not substantially predominate in their magnitude or scope, especially given the intertwined nature of the federal and state environmental claims in a case where EPA has delegated CAA enforcement to MDEQ. *See State of Tennessee ex rel. Pierotti v. 777 N. White Station Road, Memphis, Tenn.,* 937 F.Supp. 1296, 1302 (W.D.Tenn.1996) (finding that a "primary consideration" in determining supplemental jurisdiction is "the degree to which the state law claims are intertwined with the federal claim").

Detroit Edison also argues that I should decline to exercise supplemental jurisdiction because the state law claims present novel and complex issues. Rather than provide me with specific evidence and reasoning in support of this argument, Detroit Edison asserts only that "[t]here are virtually no rulings from any state appellate court on any of the state law issues raised in this case." (Pl.'s Mot. at 12.) A bare and sweeping allegation of novelty and complexity does not outweigh the presence of highly related federal and state claims. In such a situation, judicial economy speaks a strong preference for retaining the state law claims, even if they may potentially be novel and complex.

Detroit Edison finally argues that I should decline to exercise supplemental jurisdiction in this case because the state court has concurrent jurisdiction over all the federal claims brought by the parties. As this is almost always true, this argument is not helpful, and certainly not dispositive, in light of the other factors already discussed.

█ In the end, I conclude that the interests of judicial economy, convenience, fairness and comity would best be served by

resolution of all claims in this Court. I therefore exercise supplemental jurisdiction under section 1367(a) to include the parties' state law claims within my jurisdiction. I need not reach Detroit Edison's request for discretionary remand of the entire case because I have determined that the provisions of section 1367(c) and other relevant factors weigh in favor of exercising supplemental jurisdiction.

## Conclusion

For the reasons discussed, I deny plaintiff Detroit Edison's motion to remand.[8]

IT IS SO ORDERED.

---

8. This opinion does not address the parties' supplemental motions regarding the counterclaims. These motions are best left to a scheduling conference under Federal Rule of Civil Procedure 16 in which these matters and numerous other issues will be addressed.