Janice E. **WILLIAMS**, Plaintiff,

v.

**OHIO DEPARTMENT OF MENTAL HEALTH, et al.,** Defendants.

No. C2–95–456.

United States District Court,
S.D. Ohio.

April 22, 1997.

al's Office, Employment Law Section, Columbus, for Defendant.

## *OPINION AND ORDER*

SARGUS, District Judge.

This matter is before the Court on the Defendants' Renewed Motion for Summary Judgment. The defendants now challenge the jurisdiction of the District Court to entertain a suit brought by an individual against a state under the Americans with Disabilities Act, 42 U.S.C. § 12101, *et. seq.* Relying on the case of *Seminole Tribe of Florida v. Florida,* —— U.S. ——, 116 S.Ct. 1114, 134 L.Ed.2d 252 (1996), the defendant asserts that the Eleventh Amendment to the Constitution deprives this Court of the jurisdiction otherwise granted under Article III.[1]

### I.

The defendants primary contention is that the *Seminole Tribe of Florida* decision prevents this Court from exercising jurisdiction over a case in which a citizen has filed suit against a state, or its subdivision, such as the Ohio Department of Mental Health, without the state's consent, unless Congress has unequivocally abrogated the sovereign's immunity through a valid exercise of constitutional powers. In *Seminole Tribe of Florida,* a divided Supreme Court held *inter alia* that Congress could not, pursuant to its interstate commerce power, abrogate the sovereign immunity of a state and authorize suits in federal courts brought by citizens against a state.

At the same time, all members of the Supreme Court recognized that Congress has clear constitutional authority under Section 5 of the Fourteenth Amendment to abrogate a state's sovereign immunity and to authorize suits against a state in the federal courts.[2]

Barbara Kozar Letcher, Issac Brant Ledman & Teetor, Columbus, for Plaintiff.

James John Schubert, Donald Michael Collins, Pamela J. Gordon, Ohio Attorney General-

---

1. The Eleventh Amendment states:
   The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State.

2. The Fourteenth Amendment states, in part:
   SECTION 1. All persons born or naturalized in the United States, and subject to the jurisdiction thereof, are citizens of the United States and of the State wherein they reside. No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the law.

The primary issue before the Court is whether the Americans with Disabilities Act represents an exercise of Congress' authority pursuant to its interstate commerce powers or to its Section 5, Fourteenth Amendment authority.

If the Americans with Disabilities Act was enacted pursuant to Congress' interstate commerce powers, the majority holding in *Seminole Tribe of Florida* precludes this Court's exercise of subject matter jurisdiction in this case, since plaintiff seeks only damages and injunctive relief against her employer.[3] Conversely, if the ADA was properly enacted pursuant to Section 5 of the Fourteenth Amendment and Congress expressly intended to abrogate a state's sovereign immunity, this Court has subject matter jurisdiction and the defendant's motion must be denied.[4]

## II.

Resolution of the issue before the Court involves consideration of several important constitutional provisions. Under Article I, Section 8, "The Congress shall have power ... To regulate commerce ... among the several states...." U.S. Const. art. I, § 8, cl. 3. The same section provides that Congress may, "make all laws which shall be necessary and proper for carrying into Execution the foregoing powers ..." *Id.* at cl. 18. Further, Article VI of the Constitution states in part, "This Constitution, and the Laws of the United States ... shall be the supreme Law of the Land ... any Thing in the Constitution or Laws of any State to the Contrary notwithstanding." U.S. Const. art. VI.

Article III, Section 2, of the Constitution initially set forth the jurisdiction of the federal courts which permitted federal courts to hear controversies, including inter alia, cases "between a state and citizens of another state." U.S. Const. art. III, § 2. This provision of the Constitution made no reference to the necessity of consent by a state to be sued in Federal Courts.

Shortly after the ratification of the Constitution and the original Bill of Rights contained in the first Ten Amendments, the Eleventh Amendment was enacted which states:

> The judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by citizens of another state, or by the citizens or subjects of any foreign state.

U.S. Const. amend. XI. While the language of the Amendment refers only to a suit brought by a citizen of one state against another state, in *Hans v. Louisiana,* 134 U.S. 1, 10 S.Ct. 504, 33 L.Ed. 842 (1890), the Supreme Court held that the amendment also precluded a citizen from bringing a suit against his or her own state in federal court.

After the adoption of the Eleventh Amendment, the Civil War Amendments to the Constitution further altered the federal-state relationship. Section 1 of the Fourteenth Amendment to the Constitution provides in part:

> ... No state shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any state deprive any person of life, liberty, or property, without due process of

---

SECTION 5. The Congress shall have power to enforce, by appropriate legislation, the provisions of this article.

3. As such, the complaint cannot be construed as a claim to enjoin a continuing state violation of a federal statute, as in *Ex parte Young*, 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714. This action is not directed at the appropriate state official whose authority would include the power and obligation to remediate a state's violation of a federal statute.

4. The defendant's memoranda also includes, in passing, a broader attack on Congressional authority. On page 15 of its memoranda, defen-

dants assert that if Congress has the power under the Fourteenth Amendment to enact the ADA, it would also have the authority to effectuate "federalization of education, marriage and family laws ..." This assertion is separate and distinct from issues arising under the Eleventh Amendment; instead, defendants appear to challenge Congress' authority to apply the ADA to states in the same manner as it has applied the law as to private parties. Since this issue is separate and distinct from the question addressed in *Seminole Tribe of Florida,* the Court declines to address an issue not specifically raised or briefed in the defendant's memoranda.

law; nor deny to any person within its jurisdiction the equal protection of the laws.

U.S. Const. amend. XIV, § 1.

Section 5 of the same amendment provides, "The Congress shall have power to enforce, by appropriate legislation, the provisions of this article." U.S. Const. amend. XIV, § 5.

As explained in *Atascadero State Hospital v. Scanlon:*

> There are, however, certain well-established exceptions to the reach of the Eleventh Amendment. For example, if a state waives its immunity and consents to suit in federal court, the Eleventh Amendment does not bar the action ... Moreover, the Eleventh Amendment is "necessarily limited by the enforcement provisions of Section 5 of the Fourteenth Amendment," that is, by Congress' power "to enforce, by appropriate legislation, the substantive provisions of the Fourteenth Amendment." *Fitzpatrick v. Bitzer,* 427 U.S. 445, 456 [96 S.Ct. 2666, 2671, 49 L.Ed.2d 614] (1976). As a result, when enacting pursuant to Section 5 of the Fourteenth Amendment, Congress can abrogate the Eleventh Amendment without the State's consent.

*Atascadero State Hospital v. Scanlon,* 473 U.S. 234, 238, 105 S.Ct. 3142, 3145, 87 L.Ed.2d 171, *reh'g denied,* 473 U.S. 926, 106 S.Ct. 18, 87 L.Ed.2d 696 (1985).

At the same time, the Supreme Court has noted that the Eleventh Amendment implicates a fundamental constitutional balance between the national power granted to the federal government and the authority remaining with the individual states. For this reason, the Supreme Court has held that before it will conclude that Congress intended to abrogate the immunity of a state from suit in federal court, the statute in question must include "an unequivocal expression of congressional intent to overturn the constitutionally guaranteed immunity of the several States." *Pennhurst State School and Hospital v. Halderman,* 465 U.S. 89, 99, 104 S.Ct. 900, 907, 79 L.Ed.2d 67 (1984). Thus, before turning to the question of whether Congress has the authority to promulgate the ADA under Section 5 of the Fourteenth Amend-

ment, it must be demonstrated that Congress clearly intended to abrogate the State of Ohio's sovereign immunity.

As to this portion of the analysis, Congress has made an unequivocal statement. 42 U.S.C. § 12202 states:

> A State shall not be immune under the eleventh amendment to the Constitution of the United States from an action in Federal or State court of competent jurisdiction for a violation of this chapter. In any action against a State for a violation of the requirements of this chapter, remedies (including remedies both at law and in equity) are available for such a violation to the same extent as such remedies are available for such a violation in an action against any public or private entity other than a State.

■ Therefore, the sole issue before the Court is whether the Americans with Disability Act was passed pursuant to congressional authority under the Interstate Commerce Clause or pursuant to Section 5 of the Fourteenth Amendment. Congress itself included within the ADA a statement with respect to this issue.

> It is the purpose of this chapter—
>
> (1) to provide a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities;
>
> (2) to provide clear, strong, consistent, enforceable standards addressing discrimination against individuals with disabilities;
>
> (3) to ensure that the Federal Government plays a central role in enforcing the standards established in this chapter on behalf of individuals with disabilities; and
>
> (4) *to invoke the sweep of congressional authority. including the power to enforce the Fourteenth Amendment* and to regulate commerce, in order to address the major areas of discrimination faced day to day by people with disabilities. [emphasis added.]

42 U.S.C. § 12101(b).

With respect to 41 U.S.C. 12101(b)(4), it is clear that Congress intended to invoke the Fourteenth Amendment with respect to the application of the ADA as to the states and

to invoke its interstate commerce powers to make the same act applicable to private enterprise.

In *Seminole Tribe of Florida,* the Supreme Court reviewed the Indian Gaming Regulatory Act, 25 U.S.C. § 2702, *et. seq.* The Act provided for a complex regulatory scheme authorizing and limiting certain types of gaming on Indian lands. At the same time, the statute provided for a procedure by which disputes between tribes wishing to authorize gaming and states opposing the same could be resolved. Specifically, 25 U.S.C. § 2710(d)(7)(A) provided that the U.S. District Courts could heard cases brought by Indian tribes against various states. The Indian Gaming Regulatory Act was passed pursuant to the Indian Commerce Clause, contained in Article I, Section 8 of the United States Constitution.

The Supreme Court concluded that Congress may not use its powers under Article I, which include both the Indian Commerce Clause as well as the Interstate Commerce Clause, to authorize by statute, actions in Federal Court by citizens against an individual state, in the absence of the state's consent. In *Seminole Tribe of Florida,* no claim was made that Congress had enacted the statute pursuant to its authority under Section 5 of the Fourteenth Amendment. Consequently, the case provides no guidance in divining which of the two constitutional powers given to Congress are the basis for a particular piece of legislation.

Defendants cite the case of *Wilson–Jones v. Caviness,* 99 F.3d 203 (6th Cir.1996) which held that the State of Ohio and its subdivisions could not be sued in federal court under the Fair Labor Standards Act. The FLSA, which applies to the vast majority of private and public sector employees, was viewed by the Court of Appeals as an act of Congress pursuant to its Interstate Commerce powers. The Court was careful to note, and the same is cited on pages 9 and 10 of defendants' memorandum, that

> *if Congress does not explicitly identify the source of its power as the Fourteenth Amendment,* there must be something about the Act connecting it to recognized Fourteenth Amendment aims ... We

think it best to "regard as an enactment to enforce" the Equal Protection Clause, in the absence of explicit comment by Congress, only efforts to remedy discrimination against the class of persons that Fourteenth Amendment jurisprudence has already identified as deserving special protection. The FLSA does not fall within this special class of legislation and may not be regarded as passed to enforce the Fourteenth Amendment simply because it is aimed to remedy a mundane "discrimination" between private—and public—sector workers. [emphasis added.]

*Wilson–Jones,* 99 F.3d at 209–10.

This language is instructive for two reasons. First, in the case at bar, Congress has explicitly waived the sovereign immunity of the various states. Further, Congress has expressly stated that the ADA is enacted pursuant to its powers under Section 5 of the Fourteenth Amendment, with respect to its applicability to the states. Neither of these points are raised in the defendants' brief.

Secondly, the Sixth Circuit made clear in *Wilson–Jones* that Congress was entitled to broad latitude when covering "a class of people" with respect to enforcement of the Equal Protection Clause. *Id.* at 209. The Fair Labor Standards Act was "not aimed directly at discrimination against a specially-protected class." *Id.* at 211. Further, in the recent case of *Timmer v. Michigan Department of Commerce,* 104 F.3d 833 (6th Cir. 1997), the Court held that the Congress had lawfully enacted legislation permitting suits by individuals in Federal Court against states under the Equal Pay Act. While the court distinguished the Equal Pay Act from the Fair Labor Standards Act, as considered in *Wilson–Jones,* the court in *Timmer* also held:

> When Congress extended the Equal Pay Act to the states in 1974, it clearly intended to prohibit the States from establishing sex-based wage differentials ... It had the power to do so under Section 5 of the Fourteenth Amendment.

*Timmer,* 104 F.3d at 842. The Fair Labor Standards Act applies to all but a limited number of both private sector and public

sector employees and is clearly not intended to cover insular minorities or specific classes of individuals. In contrast, the Equal Pay Act was designed to eliminate sex-based wage differentials and meant to end gender-based discrimination. Based on these considerations, the Sixth Circuit has found that the Fair Labor Standards Act is a general legislative scheme involving national regulation passed pursuant to Congress's interstate commerce powers. In contrast, the Equal Pay Act is intended to eliminate past discrimination and is therefore legislation passed pursuant to Section 5 of the Fourteenth Amendment. In the Court's view, the Americans with Disabilities Act closely resembles the Equal Pay Act to the extent that both are attempts by Congress to remedy past discrimination and protect insular minorities.

The defendants attempt to analogize the ADA to the Fair Labors Standards Act. They claim that "the first Section 5 problem with this well intentioned legislation is that disability is not a suspect or even quasi suspect classification." (Defendants' Memorandum, page 11). The first case defendants' cite in support of this proposition is *City of Cleburne v. Cleburne Living Center*, 473 U.S. 432, 105 S.Ct. 3249, 87 L.Ed.2d 313 (1985).

The decision in *City of Cleburne*, however, does little to advance the defendant's argument. Initially, the Court noted,

> The Equal Protection Clause of the Fourteenth Amendment commands that no State shall "deny to any person within its jurisdiction the equal protection of the laws," which is essentially a direction that all persons similarly situated should be treated alike ... section 5 of the Amendment empowers Congress to enforce this mandate but *absent controlling congressional direction*, the courts have themselves devised standards for determining the validity of state legislation or other official action that is challenged as denying equal protection. [emphasis added.]

*City of Cleburne*, 473 U.S. at 439–40, 105 S.Ct. at 3254.

From the outset of its analysis, the Supreme Court recognized that Section 5 of the Fourteenth Amendment empowers Congress to enforce the mandate and that the courts are to devise standards only in the absence of controlling congressional direction.

While defendants correctly note that the Supreme Court refused to treat the mentally retarded as a quasi-suspect class, the Court was careful to note:

> Our refusal to recognize the retarded as a quasi-suspect class does not leave them entirely unprotected from invidious discrimination. To withstand equal protection review, legislation that distinguishes between the mentally retarded and others must be rationally related to a legitimate governmental purpose.

*Id.* at 446, 105 S.Ct. at 3257–58.

The Court concluded by holding, "[t]he short of it is that requiring the permit in this case appears to us to rest on an irrational prejudice against the mentally retarded." *Id.* at 450, 105 S.Ct. at 3260. The local ordinance was thereupon invalidated under the Equal Protection Clause of the Fourteenth Amendment.

The *Cleburne* case makes clear that Congress has the primary role in determining the parameters to the Fourteenth Amendment by virtue of its Section 5 powers. Further, while a subclass of persons with disabilities, the mentally retarded, may not be a suspect class requiring strict scrutiny of any legislation adversely affecting the group, the Supreme Court has clearly recognized that the mentally retarded are entitled to constitutional protection under the Fourteenth Amendment.

In a similar vein, in enacting the Americans with Disabilities Act, Congress noted that:

> *The Congress finds that* ... (7) individuals with disabilities are a *discrete and insular minority* who have been faced with restrictions and limitations, *subjected to a history of purposeful unequal treatment. and relegated to a position of political powerlessness* in our society, based on characteristics that are beyond the control of such individuals and resulting from stereotypic assumptions not truly indicative of the individual ability of such individuals to par-

ticipate in, and contribute to, society. [Emphasis added.]

42 U.S.C. § 12101(a).

This section of the Americans with Disabilities Act provides the "controlling congressional direction" recognized by the Supreme Court in *City of Cleburne.* Congress has expressly found that persons with disabilities constitute a discrete, insular minority suffering from historic discrimination. This description of the class incorporates all of the indicia used by prior decisions to define classes entitled to protection under the Equal Protection Clause of the Fourteenth Amendment. In *United States v. Carolene Products,* 304 U.S. 144, 58 S.Ct. 778, 82 L.Ed. 1234 (1938), Justice Stone used the exact language set forth in 42 U.S.C. § 12101(a), which described classes entitled to protection under the Equal Protection Clause to include "discrete and insular minorities." *Carolene Products,* 304 U.S. at 153, n. 4, 58 S.Ct. at 784, n. 4. Recently, the Supreme Court described Justice Stone's formulation as the "famous footnote," no doubt familiar to legal scholars as well as to members of Congress. *United States v. Virginia,* —— U.S. ——, ——, 116 S.Ct. 2264, 2296, 135 L.Ed.2d 735 (1996).

While the Supreme Court in *City of Cleburne* refused to treat mental retardation as a suspect classification, the Court made clear that it was acting in the absence of congressional direction. In *Mayer v. University of Minnesota,* 940 F.Supp. 1474 (D.Minn.1996), the court noted:

> The fact that the Supreme Court has subjected governmental classifications involving suspect classes to a higher level of scrutiny than other classifications does not prevent Congress from finding that another class of persons has been subjected to a history of unequal treatment and legislating pursuant to its enforcement powers under the Fourteenth Amendment to protect that class of persons from arbitrary discrimination.

*Id.* at 1479.

The Court finds that Congress has expressly determined that disabled individuals are an insular minority and are entitled to enhanced protection pursuant to the Equal Protection Clause of the Fourteenth Amendment. Since Congress has given plenary power under Section 5 to enforce the Fourteenth Amendment "by appropriate legislation," the legislation is based upon well-defined congressional authority.

The Supreme Court has promulgated a test to determine whether Section 5 legislation is constitutional. In *Katzenbach v. Morgan,* 384 U.S. 641, 86 S.Ct. 1717, 16 L.Ed.2d 828 (1966), the Court held that statutes passed pursuant to Section 5 of the Fourteenth Amendment were valid if the same, "... may be regarded as an enactment to enforce the Equal Protection Clause, whether it is 'plainly adapted to that end' and whether it is not prohibited by but is consistent with the 'letter and spirit of the constitution.'" *Id.* at 651, 86 S.Ct. at 1724.

The Americans with Disabilities Act satisfies the requirements of the above quoted analysis. Congress has specifically found that persons with disabilities should be entitled to the equal protection of the law. The statute makes reference to the long history of discrimination suffered by persons with disabilities and further notes that such persons are an insular minority denied the benefits of full participation in society. Further, the legislation in question is plainly adopted to the end of eliminating unequal treatment of persons with disabilities. Finally, the Court finds that the Act itself is consistent with the letter and spirit of the Constitution which seeks to provide all citizens with equal protection and equal treatment under the law.

The Court concludes that Congress has lawfully enacted the Americans with Disabilities Act pursuant to its authority under Section 5 of the Fourteenth Amendment. Consistent with such powers, Congress has also created jurisdiction for this Court in the case at bar, involving the claim of an individual against a state institution under the ADA.

In the aftermath of *Seminole Tribe of Florida,* a number of other courts have also found that the various states may be sued by individuals in federal court under the Americans with Disabilities Act. *See e.g., Armstrong v. Wilson,* 942 F.Supp. 1252 (N.D.Cal.

1996); *Niece v. Fitzner,* 941 F.Supp. 1497 (E.D.Mich.1996); *Mayer v. University of Minnesota,* 940 F.Supp. 1474 (D.Minn.1996); *Hunter v. Chiles,* 944 F.Supp. 914 (S.D.Fla. 1996). Further, the Court notes that in *Martin v. Voinovich,* 840 F.Supp. 1175 (S.D.Ohio 1993), Judge George C. Smith of this Court held in a decision rendered prior to *Seminole Tribe of Florida* that the State of Ohio was amenable to suit in federal court in an action brought by an individual under the Americans with Disabilities Act. Consequently, the first branch of the defendants' renewed Motion for Summary Judgment is **DENIED.**

## II.

The Court, *sua sponte,* notes that plaintiff's complaint alleges violations of both the Americans with Disabilities Act and §§ 4112.02(A) and 4112.99 of the Ohio Revised Code. The latter state statutes prohibit employment discrimination based on an employee's disabilities.

■ While Congress has expressly overwritten the state's Eleventh Amendment immunity in enacting 42 U.S.C. § 12202, such section only applies to claims arising under the Americans with Disabilities Act. No such waiver against a state or its agencies is contained in Ohio Revised Code § 4112.01 *et. seq.* Consequently, this Court finds that it lacks jurisdiction over claims asserted by the plaintiff against the Ohio Department of Mental Health under state law. Therefore, the defendant, Ohio Department of Mental Health, is **DISMISSED** as to Count 2 of the complaint.

## III.

■ The defendants have also asked the Court to revisit its prior denial of the defendants' Motion for Summary Judgment. The defendants have resubmitted the October 6, 1996 affidavit of the plaintiff which has been previously considered by the Court. In addition, the defendant has submitted two new affidavits, the first from Sandy F. May, indicating that the plaintiff has suffered no adverse job action in the course of her employment and that the plaintiff has not complained to her concerning harassment on the job site. The second affidavit is from a Ted Dyrdeck verifying that the plaintiff has received normal and regular raises, as well as positive evaluations from her supervisors. In essence, both affidavits are submitted to indicate that the plaintiff did not suffer any adverse employment consequences as to the matters complained of in the complaint.

As noted in the Court's original Opinion and Order denying summary judgment, the defendants have failed to respond to plaintiff's averment of panic attacks outlined in her affidavit of October 6, 1996. In paragraphs 21 through 23 of the affidavit, plaintiff alleges that her supervisor mocked her need for a cane and on more than one occasion actually kicked the cane out from under her, all of which caused anxiety and instances of panic attacks. While the Court noted in the original Opinion and Order that the plaintiff's affidavit is not a model of precision as to how the panic attacks specifically affected her employment, the Court concluded that the affidavit testimony was sufficient to create a genuine issue of material fact as to her hostile work environment claim. After reviewing the additional submission of the defendants, the Court **DECLINES** to modify its earlier Opinion and Decision and the Renewed Motion for Summary Judgment is **DENIED.**

**IT IS SO ORDERED.**