Beth Ann MEEKISON, Plaintiff,

v.

George VOINOVICH, et al., Defendants.

No. 96 CV 00931.

United States District Court, S.D. Ohio, Eastern Division.

Aug. 21, 1998.

**727**

Robert Karl Handelman, Handelman & Kilroy, Columbus, OH, for Plaintiff.

Joseph Norbert Rosenthal, Jack Wilson Decker, Noelle T. Tsevdos, Ohio Attorney General, Employment Law Section, Columbus, OH, for Defendants.

### OPINION AND ORDER

MARBLEY, District Judge.

### I. INTRODUCTION

This matter comes before the Court on Defendants' Motion for Summary Judgment (doc. 27). Plaintiff Beth Ann Meekison filed this action against Defendants George Voinovich, Reginald Wilkinson, and the Ohio Department of Rehabilitations and Corrections ("ODRC") alleging violations of her rights under the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq.*, and the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 *et seq.* Jurisdiction is proper in this Court under 28 U.S.C. § 1331. For the reasons set forth below, Defendants' Motion for Summary Judgment is **GRANTED** with respect to the claims against Voinovich and Wilkinson, and **DENIED** as to the claims against the Ohio Department of Rehabilitations and Corrections. The Motion for Summary Judgment of Defendants Voinovich and Wilkinson is **GRANTED** and Defendant ODRC's Motion for Summary Judgment is **DENIED.**

### II. FACTUAL BACKGROUND

Defendant Ohio Department of Rehabilitation and Correction operates and manages the State of Ohio's prison system. ODRC opened the North Central Correctional Institution ("NCCI"), where Plaintiff Beth Ann Meekison ("Meekison") was employed, on November 1, 1994.

Meekison applied for the position of Psychology Assistant II at the NCCI on September 2, 1994. The job posting provided, in relevant part, the following description of the position:

Performs initial screening & evaluation of psychological patients & administers, scores & interprets psychological tests, subject to supervisory review, conducts interview & provides individual & group counseling & psychotherapy sessions under direct guidance of licensed psychologist.

Also, according to the job posting, an applicant for the position of Psychology Assistant II was qualified if the applicant possessed:

— Doctoral degree in psychology or other doctoral degree deemed equivalent by Ohio State Board of Psychology; or

— Master's degree in psychology from educational institution accredited or recognized by national or regional accrediting agency or master's degree deemed

equivalent by Ohio State Board of Psychology; 3 years psychological work experience of type satisfactory to Ohio State Board of Psychology; or

— 3 years experience as Psychology Assistant I; or

— Alternative, equivalent evidence of the minimum qualifications.

In support of her application, Meekison submitted a form with her employment history and a copy of her academic transcript from the Ohio State University. It is undisputed that Meekison did not have a doctoral or master's degree in psychology, nor was she admitted to a doctoral program in psychology. Although Meekison represented that she was a "Ph.D. Candidate" with "130 [academic credit] hours of clinical psychology" training, she did not represent that she was a doctoral candidate in the psychology program.

Beyond her significant course work in psychology, Meekison also worked as a "Psychology Assistant" under the supervision of Dr. Guy Melvin from December, 1992, through the time of her application for the Psychology Assistant II position at the NCCI in 1994. Also, Meekison was a psychology assistant intern for the Ohio Department of Mental Health in 1983.

After reviewing Meekison's background and qualifications, ODRC hired Meekison as a Psychology Assistant 2 at the NCCI on October 17, 1994. She was not initially hired as a permanent employee. Instead, she was hired on a probationary basis in accordance with the terms of the collective bargaining agreement.

Meekison next attended the ODRC Training Academy for three weeks beginning in late October, 1994. There, she would receive training on things such as self-defense, safety, and handling inmates. Prior to the commencement of the training session, all of the trainees were required to list any conditions which could possibly affect their participation in the training session. On this form, Meekison informed ODRC that she was "dyslexic."

Meekison testified that her dyslexia was identified for her by staff members during a high school academic camp. She also testified that her undergraduate and graduate institutions, Denison and Ohio State, respectively, were aware of her dyslexic condition and made appropriate accommodations for her, such as assignment to a quiet study carrel, additional time to finish tests, and permission to use a dictionary during exams. These allowances were made, at least in part, based on communications between staff members from her high school camp and the educational institution.

Meekison began her probationary employment following her stay at the Training Academy. Throughout this period of employment, there was tension in the relationship between Meekison and her supervisor, Dr. Nancy Steele, centered around Meekison's refusal to conduct unsupervised group sex offender therapy, which she believed to be contrary to the terms of her employment and, moreover, an extreme safety risk. On at least two occasions in November and December, Meekison refused Dr. Steele's directive that she (Meekison) conduct unsupervised group therapy. It is undisputed, however, that Dr. Steele was unable to supervise the psychology assistants and their therapy sessions prior to obtaining her license verification from the Ohio Board of Psychology sometime in December, 1994.

During this time period, Meekison began to complain that the noisy working conditions surrounding her office at the NCCI were unreasonable, in light of her dyslexia, and requested that she be moved to a quieter section of the building. She complained that noise from the inmate television room, which was located next to her office, interfered with the performance of her reading and writing duties. On December 28, 1994, Meekison wrote a memo to Dr. Steele entitled "Meeting with Mr. Bratton and *dyslexia.*" (Emphasis added). In the memo, Meekison informed Dr. Steele that the noise from the inmates in the television room "continues to challenge [her] dyslexic reading and writing concentration." It is undisputed that Dr. Steele received and read this memo from Meekison.

On January 17, 1995, ODRC decided to terminate Meekison's employment at the NCCI. ODRC based its termination decision

in part on poor performance evaluations in which Meekison's reading and writing skills were criticized. Meekison filed this action on September 19, 1996, against Governor George Voinovich, Reginald Wilkinson (Director — ODRC), and ODRC, alleging that ODRC's decision to terminate her employment as a Psychology Assistant II was motivated by a discriminatory animus on the basis of her disability, dyslexia, and her age, 40, at the time of termination.

## III. LEGAL ANALYSIS

### A. Standard For Summary Judgment

Rule 56 provides that summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." Fed. R.Civ.P. 56(c). The movant has the burden of establishing that there are no genuine issues of material fact, which may be accomplished by demonstrating that the nonmoving party lacks evidence to support an essential element of its case. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322–323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Barnhart v. Pickrel, Schaeffer & Ebeling Co., L.P.A.,* 12 F.3d 1382, 1388–89 (6th Cir.1993). The nonmoving party must then present "significant probative evidence" to show that "there is [more than] some metaphysical doubt as to the material facts." *Moore v. Philip Morris Cos., Inc.,* 8 F.3d 335, 339–40 (6th Cir.1993). "[S]ummary judgment will not lie if the dispute is about a material fact that is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986) (Summary judgment appropriate where the evidence could not lead a trier of fact to find for the non-moving party).

In evaluating such a motion, the evidence must be viewed in the light most favorable to the non-moving party. *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 157, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970). The mere existence of a scintilla of evidence in support of the non-moving party's position will be insufficient; there must be evidence on which the jury could reasonably find for the non-moving party. *Anderson,* 477 U.S. at 251, 106 S.Ct. 2505; *Copeland v. Machulis,* 57 F.3d 476, 479 (6th Cir.1995).

### B. Whether Defendants Voinovich and Wilkinson, as Individuals, Can Be Held Liable Under the ADA and ADEA

■ The Court finds that, as a matter of law, Defendants Voinovich and Wilkinson cannot be held liable as individuals under the ADA and the ADEA. Both the ADA and ADEA prohibits discrimination by any employer, employment agency, or labor organization. 42 U.S.C. § 12112(a)(ADA); 29 U.S.C. § 623 (ADEA). The definition of an "employer" under both the ADA and ADEA mirrors that of Title VII, differing only in the number of employees required for liability. *See* 42 U.S.C. § 2000e(b) (Title VII defines an "employer" as "a person engaged in an industry affecting commerce who has 15 or more employees ...."); 42 U.S.C. § 12111(5)(A) (The ADA defines an "employer" as "a person engaged in an industry affecting commerce who has 15 or more employees ...."); 29 U.S.C. § 630(b) (The ADEA defines an "employer" as "a person engaged in an industry affecting commerce who has twenty or more employees ...."). Based on the language and purposes of the statutory scheme, the Sixth Circuit has held that individuals who do not otherwise qualify as an "employer" cannot be held individually liable under Title VII. *Wathen v. General Electric Co.,* 115 F.3d 400, 403–06 (6th Cir. 1997). Because the definitions of Title VII, the ADA and ADEA are similar and, essentially, interchangeable, this Court finds that the holding in *Wathen* applies in full force with respect to the ADA and ADEA. Thus, Defendants Voinovich and Wilkinson's Motions for Summary Judgment are hereby GRANTED.

### C. Whether the ADA and ADEA Abrogate Eleventh Amendment Sovereign Immunity

The Eleventh Amendment of the Constitution provides:

The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State.

U.S. Const. amend. XI. ODRC, a state governmental employer, argues that Meekison's claims under the ADA and ADEA are constitutionally barred by the Eleventh Amendment. Although the statutory language of the ADA and ADEA extends liability to both federal and governmental employers,[1] ODRC contends that neither statute validly abrogates Eleventh Amendment sovereign immunity.

■ This Court finds that ODRC is not immune from Meekison's ADA and ADEA claims. With respect to Meekison's ADA claim, this Court relies upon the holding and reasoning of Judge Sargus in *Williams v. Ohio Dept. of Mental Health*, 960 F.Supp. 1276 (S.D.Ohio 1997). There, the court found that Congress had unmistakably expressed its intent to abrogate the states' Eleventh Amendment sovereign immunity. *Id.* at 1279. Furthermore, the *Williams* court also concluded that Congress enacted the ADA pursuant to § 5 of the Fourteenth Amendment, under which persons with disabilities are entitled to constitutional equal protection. *Id.* at 1282; *see also City of Cleburne v. Cleburne Living Center*, 473 U.S. 432, 439–40, 105 S.Ct. 3249, 87 L.Ed.2d 313 (1985).

With respect to Meekison's ADEA claim, this Court has previously held that Congress validly abrogated the states' Eleventh Amendment sovereign immunity when it enacted the 1974 ADEA amendment extending liability to federal and state employers. *Hines v. The Ohio State University*, 3 F.Supp.2d 859 (S.D.Ohio). ODRC has not presented any arguments to this Court which would necessitate revisiting its decision in *Hines*.

Based on the foregoing, this Court concludes that ODRC, as a state governmental employer, is amenable to suit under both the ADA and ADEA.

### D. Meekison's Claim Under the ADA

To establish a *prima facie* case under the ADA, Meekison must show:

(1) she was disabled within the meaning of the statute at the time of her employment;

(2) she was qualified to perform the essential functions of her job with or without accommodation; and

(3) she suffered an adverse employment decision because of her disability.

*Gilday v. Mecosta County*, 124 F.3d 760, 762 (6th Cir.1997). The burden shifting analysis under the ADA follows the *McDonnell Douglas/Burdine/Hicks* scheme for Title VII claims. *Monette v. Electronic Data Systems Corp.*, 90 F.3d 1173, 1178–79, 1185 (6th Cir. 1996).

### 1. Whether Meekison was Disabled at the Time of Her Employment

■ With respect to the first element of the *prima facie* case under the ADA, Meekison must establish that she was disabled at the time of the alleged discriminatory act. *Kocsis v. Multi–Care Management, Inc.*, 97 F.3d 876, 884 (6th Cir.1996). To demonstrate that she was disabled, Meekison must first show one of the following:

(1) that she had an impairment that substantially limited her major life activities; or

(2) that she had a record of such an impairment; or

(3) that she was perceived as having such an impairment.

*Id.* Next, she must establish that ODRC knew of her disability. *Kocsis at 884; Hedberg*, 47 F.3d at 932–34; *Landefeld v. Marion Gen. Hosp., Inc.*, 994 F.2d 1178, 1181 (6th Cir.1993).

### a. Whether Dyslexia Qualifies as a Disability Under the ADA

ODRC argues that Meekison was not "disabled," as defined in the ADA, because she was never formally diagnosed with dyslexia. In support of its position, ODRC points to deposition testimony where Meekison admits

---

**1.** *See* 42 U.S.C. § 12111(5)(ADA); 29 U.S.C. § 630(b)(2) (ADEA).

that she: (1) cannot remember who allegedly diagnosed her dyslexia in high school; and (2) was never formally diagnosed while attending classes at Ohio State. Because of such admissions, ODRC argues that Meekison cannot carry her burden of proving that she was disabled at the time of the alleged discriminatory act.

This Court is duty bound to view the evidence in the light most favorable to the nonmoving party — in this case, Meekison. *Adickes,* 398 U.S. at 157, 90 S.Ct. 1598. At a minimum, Meekison has demonstrated that a genuine issue of material fact exists with respect to whether she has dyslexia. Meekison testified that her alleged dyslexia was identified for her at a high school academic camp. Furthermore, she testified that her undergraduate and graduate schools accommodated her dyslexia based on communications with the staff members at the high school academic camp. She has also adduced two pieces of documentary evidence, the ODRC training form and her December 28, 1994, memorandum to Dr. Steele, which indicate that ODRC was aware of her alleged condition. Thus, for the purposes of its summary judgment analysis, the Court will assume her dyslexia to be true in fact.

With respect to the relationship between her dyslexia and the job functions, Meekison argues that the constant noise from the television room, which was located adjacent to her office at NCCI, aggravated her learning disability and made it extremely difficult for her to complete the necessary reading and writing tasks associated with the Psychology Assistant II position. As evidence of the environmental effect on her dyslexia, she points to her mid-probation and final evaluations, in which she was criticized for her inability to complete projects in a timely fashion and to prepare written documentation. Meekison argues that both criticisms are directly related to her learning disability and the noisy, disruptive nature of her work environment.

■ In addressing the issue of whether a particular condition qualifies as a disability under the ADA, courts may rely upon administrative regulations promulgated by agencies charged with enforcing certain statutory rights, as well as any regulatory interpretations by that agency. *Lyng v. Payne,* 476 U.S. 926, 939, 106 S.Ct. 2333, 90 L.Ed.2d 921 (1986); *Wolpaw v. Commissioner of the Internal Revenue,* 47 F.3d 787, 790 (6th Cir. 1995). Indeed, the Sixth Circuit has relied upon the administrative regulations promulgated by the EEOC in interpreting provisions of the ADA. *Gilday,* 124 F.3d at 762–65.

■ The EEOC regulations define a "physical or mental impairment" as any "mental or psychological disorder, such as ... a specific learning disorder." 29 C.F.R. § 1630.2(h)(2). The EEOC mentions dyslexia as a specific learning disability in its Appendix to § 1630:

> ... an individual who is unable to read because of dyslexia would be an individual with a disability because dyslexia, a learning disability, is an impairment.

29 C.F.R. Pt. 1630, App., § 1630.2(j). Thus, this Court finds that, as a matter of law, dyslexia qualifies as an "impairment" under the ADA.

Next, this Court must determine whether Meekison's condition substantially limited her participation in the major life activity of working. *See* 29 C.F.R. § 1630.2(I) ("major life activities" under the ADA includes the ability to work). The EEOC, in its Interpretive Guidelines, provides the following guidance for determining whether a limitation is "substantial":

> An individual is substantially limited in working if the individual is significantly restricted in the ability to perform a class of jobs ... when compared with the ability of the average person with comparable qualifications to perform those same jobs.

29 C.F.R. Pt. 1630, App., § 1630.2(j).

■ This Court finds that Meekison has demonstrated that her impairment, dyslexia, significantly restricted her ability to perform the reading and writing tasks associated with the class of positions available in the psychology field as compared to the average person with comparable qualifications in the same job. According to the job descriptions submitted by ODRC, all of the psychology posi-

tions require significant reading and writing tasks. Certainly dyslexia, which impairs reading ability and comprehension, substantially limits one's ability to perform a class of jobs within the psychology field. Indeed, Meekison was criticized in her mid-probation and final evaluations for her inability to complete projects in a timely fashion and prepare written documentation. These criticisms, arguably, relate directly to Meekison's dyslexic condition and the alleged noisy, disruptive nature of her work environment.

Based on the foregoing, this Court finds that Meekison has established, for purposes of this summary judgment motion, that she was disabled at the time of the alleged discriminatory discharge.

### b. Whether Defendants Were Aware of Plaintiff's Disability

Next, the Court turns its attention to the issue of whether ODRC was aware of Meekison's dyslexia. The Court finds that Meekison has carried her burden of establishing that genuine issues of material fact exist with respect to ODRC's knowledge of her disability. First, Meekison filled out an Ohio Department of Correction form during her October, 1994, trip to the training academy, listing dyslexia as a condition which could have affected her participation the training. Second, Meekison's supervisor, Ms. Steele, admits in her affidavit that Meekison "mentioned having a learning disability." Finally, in a December 28, 1994, memo to Ms. Steele, entitled "Meeting with Mr. Bratton *and Dyslexia,*" (emphasis added), Meekison informed Ms. Steele that the noise from the adjacent TV Room "continues to challenge my dyslexic reading and writing concentration." Steele Aff., para. 15. Thus, at a minimum, Meekison has demonstrated that genuine issues of fact exist with respect to whether ODRC knew of her disability.

### 2. Whether Plaintiff Was Qualified to Hold the Position of Psychology Assistant II

■ To be entitled to summary judgment on Meekison's ADA claim, ODRC must establish that she has failed to demonstrate that genuine issues of material fact exist with respect to whether she was a qualified individual with a disability. Under the ADA, a "qualified individual with a disability" is defined as:

> ... an individual with a disability who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires.

42 U.S.C. § 12111(8); 29 C.F.R. § 1630.2(m). Courts have distilled this statutory definition into the following two prong test:

> (1) whether the individual has the requisite skills, experience, and education for the job; and
>
> (2) whether the individual can perform the essential job functions with or without reasonable accommodation.

*McCrory v. Kraft Food Ingredients,* 98 F.3d 1342, 1996 WL 571146, *5 (6th Cir.1996) (table); *Weiler v. Household Finance Corp.,* 101 F.3d 519, 525 (7th Cir.1996). Consideration should be given to an employer's judgment as to what functions of the job are essential. 42 U.S.C. § 12111(8). However, where an employer has prepared a written description before advertising or interviewing for the job, such a description shall be considered evidence of the essential functions of the job. *Id.*

### a. Requisite Skills, Experience, and Education for the Job

ODRC argues that Meekison was not qualified for the position of Psychology Assistant II because she did not possess a graduate degree in the field of psychology, a fact which she admitted in her deposition. ODRC further argues that Ohio State Board of Psychology definition of "psychology assistant," which required a graduate psychology degree, was incorporated into its job posting.

The Court finds that Meekison has carried her burden in demonstrating that a genuine issue of material facts exists with respect to her qualification for the Psychology Assistant II position. The text of the ODRC job posting does not, as ODRC argues, require a master's degree. Instead, the clear and unequivocal text of the job posting provided that a party applying for the Psychology Assistant II position needed only "alternative, equivalent evidence of the minimum

qualifications." Nowhere in the job posting was an applicant required to possess a graduate degree in psychology, nor was the applicant informed that the "minimum qualifications" set forth in the posting incorporated extrinsic requirements. It is somewhat inconsistent for ODRC to assert that a graduate degree in psychology was an "essential job requirement" for the Psychology Assistant II position when such a requirement was never communicated to prospective applicants, including Meekison.[2]

### b. Ability to Perform Essential Job Functions

ODRC argues that Meekison was unable to perform three essential functions of a Psychology Assistant II. First, ODRC alleges that Meekison admitted to Ms. Steele that she (Meekison) was not qualified to conduct group therapy sessions. Second, ODRC alleges that Meekison also admitted that she was not qualified to conduct group therapy with sex offenders. Finally, ODRC argues that Meekison was unable to "get along" with Ms. Steele and follow orders. As evidence of such insubordination, ODRC cites Meekison's refusal follow Ms. Steele's order to conduct unsupervised group therapy.

This Court finds that Meekison has carried her burden with respect to establishing that she was able to perform the essential functions for the Psychology Assistant II job. Meekison testified in her deposition that she was unqualified to conduct *unsupervised* group therapy, especially with sex offenders, which required a higher level of specialized training than she had. The job posting for the position, which provided that a Psychology Assistant II was expected to perform "individual & group counseling & psychotherapy **under direct guidance of licensed psychologist.**" (Emphasis added). Meekison states in her affidavit that she received almost no clinical supervision from Ms. Steele as promised in the job description, which is contrary to the text of the job description.

Based on the foregoing, the Court finds that Meekison has established the second prong of the *prima facie* case.

### 3. Whether Plaintiff Suffered an Adverse Employment Action Because of her Disability

The Court finds that Meekison has satisfied her burden with respect to establishing the third prong of the *prima facie* case. Meekison's employment at NCCI was terminated on January 17, 1995, in part due to her poor performance evaluations in which she was criticized for her reading and writing skills. She has alleged that her inability to perform the reading and writing tasks of her job in a satisfactory manner was due to her disability and Defendants' refusal to accommodate her disability.

For the foregoing reasons, this Court finds that Meekison has established a *prima facie* case under the ADA.

### 4. Defendants' Legitimate Non-Discriminatory Reason for Termination

■ ODRC asserts two reasons for terminating Meekison's employment. First, ODRC asserts that Meekison was unable to perform an essential function of her job — unsupervised group counseling. Second, ODRC asserts that Meekison's termination was warranted due to her inability to "get along" with her supervisor and follow orders, such as to conduct *unsupervised* group therapy.

The Court finds that ODRC's reasons are sufficient to carry their burden.

### 5. Pretext Analysis

■ The burden now shifts to Meekison to demonstrate that genuine issues of material fact exist as to whether ODRC's proffered non-discriminatory reason is merely pretext for prohibited discrimination. She can prove this in one of three ways: 1) directly by showing that the proffered reason has no basis in fact, i.e., the reason is factually false; or 2) directly by showing that the proffered

---

**2.** This Court further notes that it is inconsistent for ODRC to assert, at summary judgment, that Meekison was unqualified for the Psychology Assistant II position due to her lack of a graduate psychology degree, when ODRC possessed information regarding Meekison's academic background when it decided to hire her. By virtue of hiring her, ODRC implicitly recognized that Meekison was "qualified" for the Psychology Assistant II position.

reason is insufficient to motivate the decision not to promote her; or 3) indirectly by producing evidence that a discriminatory reason more likely motivated the defendant. *Manzer v. Diamond Shamrock Chemicals Co.*, 29 F.3d 1078, 1084 (6th Cir.1994).

The court finds that, based on the evidence discussed above under the *prima facie* analysis, Meekison has demonstrated that genuine issues of material fact exist with respect to whether unsupervised group sessions were an essential function of the job, as well as the nature of her alleged insubordination.

Based on the foregoing, ODRC's Motion for Summary Judgment on Meekison's claim under the ADA claim is hereby **DENIED**.

### E. Meekison's Claim under the ADEA

#### 1. Prima Facie Case

■ To establish a *prima facie* case under the ADEA, Meekison must show the following:

a) membership in the protected class (between the ages of 40 and 70);

b) that she applied and was qualified for a promotion;

c) despite her qualifications, she was discharged; and

d) that similarly situated younger workers were treated more favorably than her, or the position was filled by someone younger than her.

*Id.* at 582–83; *Carpenter v. Western Credit Union*, 62 F.3d 143, 144 (6th Cir.1995). Contrary to the assertion of both parties, it is not necessary that the similarly situated person be someone outside of the protected class —— they need only be younger than the aggrieved party. *O'Connor v. Consolidated Coin Caterers Corp.*, 517 U.S. 308, 310–12, 116 S.Ct. 1307, 134 L.Ed.2d 433 (1996).

■ Meekison was 40 years of age when her employment was terminated. The issue of whether she was qualified for the position is set forth fully above under this Court's analysis of her ADA claim —— there is, at a minimum, a genuine issue of material fact as to whether she was qualified with "alternative equivalent experience" for the Psychology Assistant II position. Under the ADA analysis, the Court also found that Meekison

suffered an adverse employment action. The only question before the Court, with respect to the *prima facie* case under the ADEA, is whether others were treated more favorably or differently than Meekison.

The Court finds that Meekison has satisfied her burden in establishing the fourth prong of a *prima facie* case under the ADEA. ODRC's argument that no inference of discriminatory intent can be drawn because Ms. Steele, Meekison's supervisor, was older than Meekison is legally incorrect. *See O'Connor*, 517 U.S. at 311–12, 116 S.Ct. 1307 (fourth prong of the *prima facie* case under the ADEA focuses on whether the similarly situated parties are younger than the plaintiff). Also, it is undisputed that Meekison's replacement, Darrell Moneyhon, was younger than her when he was hired by ODRC.

Viewing the facts in the light most favorable to the non-moving party, Meekison, the Court finds that she established a *prima facie* case under the ADEA.

#### 2. Legitimate Non–Discriminatory Reason for Termination and Pretext Analysis

The arguments and evidence presented here with respect ODRC's legitimate non-discriminatory reason and the pretext analysis are the same as those presented above under the ADA claim. As this Court found there, Meekison has carried her burden and established that genuine issues of material fact exist with respect to whether unsupervised group therapy was an essential job function for the Psychology Assistant II position, and as to Meekison's alleged insubordination.

Based on the foregoing, ODRC's Motion for Summary Judgment on Meekison's claim under the ADEA is hereby **DENIED**.

### F. CONCLUSION

For the foregoing reasons, the Court hereby **GRANTS** the Motion for Summary Judgment with respect to all claims against Defendants Voinovich and Wilkinson, and **DENIES** the Motion for Summary Judgment with respect to all claims against De-

fendant Ohio Department of Rehabilitations and Corrections.

**IT IS SO ORDERED.**